[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff, Exwood Corporation, against two defendants, Michael Brosmith and Edward Smith, in which the plaintiff seeks indemnification for damages which it paid when Jason Westcott fell or was pushed into a stairwell on the plaintiffs property. In that case,Westcott v. Exwood Property Corporation, Superior Court at Hartford, Docket No. CV 96-0475950 S, Westcott sued Exwood Property Corporation claiming that he was injured in a fall into an unguarded stairway. Exwood settled that case for $125,000 and now seeks reimbursement against Brosmith and Smith.
Plaintiff has filed an Amended Complaint in four counts. In the First and Third Counts it alleges negligence against Brosmith and Smith individually and in the Second and Fourth Counts it claims intentional acts by the defendants and seeks indemnification therefor. It should be noted here that on page 5 of the plaintiffs brief it acknowledges that there was no "intentional tort" committed by either defendant. There was also a counter-claim filed by each defendant against the other.
In paragraph 5 of the First Count the plaintiff alleges that Michael Brosmith negligently and carelessly pushed Jason Westcott over a retaining wall and as a direct result and by reason of the defendant's negligence and carelessness, Westcott sustained injuries. The same allegations are made by the plaintiff against Edward Smith in the Third Count.
The case was tried before the court on May 6, 2002.
The court finds the issues for the defendants individually and jointly. In arriving at this conclusion the court has heard the parties, examined the exhibits, including Exhibit 2 (Incident Report of a police officer); has read and reread the deposition of Jason Westcott (Exhibit 4); has examined the diagram made for the court (Exhibit 5) and the three photographs of the stairwell (Exhibits 6, 7 and 8). The court has also CT Page 16492 read, reread and outlined the transcript of the trial. It is the opinion of this court that the plaintiff has been unable to prove by a fair preponderance of the evidence what was the proximate cause of Westcott's injuries and was therefore unable to prove that either party engaged in "active" negligence required to indemnify a party whose liability is based on "passive negligence". Connecticut Law of Torts, 3rd Ed., Chapter XXI, pp. 528, 29.
The evidence produced by the plaintiff amounts to a hodge podge of conflicting statements from which the court cannot properly draw a final conclusion as to liability of either or both defendants.
At the beginning of trial both parties agreed on the first four exhibits and then entered into a stipulation that the premises on which the incident occurred were in fact owned by Exwood Property Corporation and were controlled by Exwood Property Corporation and the Farley Company; that the incident occurred on September 18, 1994 when Westcott was approaching a portion of the premises consisting of a bar and restaurant known as Murphy Scarletti's; that the defendants were both partrons of Murphy Scarletti's on that date; that on or about January 12, 1999 the plaintiff settled the claims asserted by Westcott against it for the sum of $125,000 receiving a general release; that the amount of the aforesaid settlement was reasonable and that there was no independent relationship between the plaintiff and the defendant.
At trial the first witness was Mr. Woytilla, Superintendent of the building at the time of the incident. Mr. Woytilla could throw no light on the actual incident but did describe the area where the incident took place which was a stairway alongside the north end of the building in which Murphy Scarletti's was housed. The three photographs, Exhibits 6, 7 and 8, give a very clear indication of the construction of the stairway. Mr. Woytilla explained that there was a raised area to the left as you come out of the entrance to Murphy Scarletti's and that there was a row of shrubs in the back against the very low retaining wall and also a tree in the middle and a lot of flowers in front. Behind the shrubs, flowers and trees there was a stairwell with no railing and no gate. He also described a blue-stone walkway that leads to the parking lot away from the entrance which was about seventeen to eighteen feet long and that it would be about five to six feet to the tree from the walkway and two to three feet from that tree to the stairwell.
Mr. Woytilla testified that Murphy Scarletti's was a restaurant that served alcoholic beverages; that the depth of the stairwell was, by his estimation, ten to twelve feet, possibly eighteen. The stairwell led down to a maintenance office. Mr. Woytilla testified on cross-examination CT Page 16493 that it was quite common that the police were summoned to Murphy 
Scarletti's for someone who got too intoxicated; that the place was used by young people partying and that there were incidents in the parking lot as well as inside the restaurant. Occasionally customers wrote up incidents that occurred and such incidents were reported to the management. If anything, his testimony substantiated the dangerous condition of this unguarded open stairwell in an area where inebriated people are likely be.
The only other witnesses called by the plaintiff were the two defendants. They were in fact the only other witnesses. The defendants rested their case without offering any testimony. The first witness was the defendant, Michael Brosmith, followed by Mr. Edward Smith. In addition thereto, the court had available to it a deposition of Westcott. The undisputed evidence was that Brosmith and Smith, very close friends, had been partying at the home of Brosmith's sister, celebrating his father's 60th birthday. They had imbibed alcohol. They and a group then went to Murphy Scarletti's but did not drive because they felt that they were not in good enough shape to do so. At Murphy 
Scarletti's they had more alcohol. Both admitted that they were inebriated and unfit to drive home and for this reason they, or somebody in their party, ordered a taxi cab. At about 1:30 a.m. they left the entrance to Murphy Scarletti's (See Exhibit 8).
The conflicting testimony begins immediately after they step on to the blue stone sidewalk. Brosmith stepped to the left onto a raised landscape portion that has a number of shrubs and a small tree. His position was close to the tree which is about six feet from the walkway. He went there to urinate and did so. At this point Westcott arrived from the parking lot. He was under the influence of alcohol and recently sniffed cocaine at a friend's house. He maintained that the person who was urinating hit him on the side of the head with a soft plastic bag. Brosmith said Westcott made some remark such as "you're a smart ass" and the man came charging him. According to Brosmith Westcott's condition was "extremely impaired". At this point he fell over the hidden stairwell which he could not see and was badly injured at the bottom of the stairwell.
Westcott maintains that he was pushed and said many times that he was not pushed by Brosmith but by one of the people who were standing on the walkway. He was uncertain as to whether there were two or three people there but refers to three people very often in his testimony. William Brosmith (defendant's brother) called 911. The police and an ambulance arrived. Westcott was treated by the medics and taken to the hospital.
According to his incident report (Exhibit 2) a police officer CT Page 16494 interviewed Westcott while he was being treated by the medic and quotes him as saying that he was "loudly arguing with someone and the guy pushed him over the side of the stairwell." The report notes that the policeman spoke with Kevin Brosmith, Karen Brosmith, Edward Shea, William Brosmith and Michael Brosmith; that William Brosmith said he had called 911 after hearing someone yelling for help; that all of the above parties said they saw no-one leave the area as they had been standing in front of Murphy's for approximately three minutes waiting for a cab. It also quotes William Brosmith as saying "I'm not going to lie" and that all parties above were under the influence of alcohol. Brosmith admitted arguing with his brother after the incident.
Michael Brosmith is quoted by the policeman as saying that he had been standing in the bushes by the stairwell to urinate. He said he saw Westcott and started "instigating" (sic) him verbally. He said Westcott approached him and swung at him and Westcott missed and fell into the stairwell. The policeman also interviewed Shea who gave the same story as Brosmith with respect to the punch, the miss and the fall. Mr. Brosmith was arrested for assault. He retained counsel and after some lengthy period of time was granted accelerated rehabilitation and his record was erased. Brosmith told the same story to the court many times during his criminal case and never told a different version of the story to his attorney throughout the period following his arrest.
Brosmith on trial, however, indicated that "the taxi had already been called", that he and Mr. Shea were "outside waiting for the taxi." He stated that Westcott was coming at him from the parking lot, not from the walkway but close to the walkway which indicates that Westcott came into the landscaped area. Mr. Brosmith testified that Mr. Westcott was approaching him but he thinks he did not make physical contact with him. He came after him in an "aggressive manner" and he didn't recall whether "he or I ever threw shots at one another before he ended up going over the wall." At this point Mr. Brosmith departed from the story he had used for four years prior to his deposition on June 28, 2000 and had declared in his sworn testimony on trial. He did a complete about-face. He admitted that he gave the story to the police as mentioned above but did so by agreement with Smith that he would "cover his back" and take the blame and Smith would share the legal expenses with him because Mr. Westcott was pushed over the wall by Ed Smith in a spontaneous occurrence; that Mr. Smith pushed Mr. Westcott over the wall with "two hands to his back" and thereafter Mr. Smith was "extremely panicked."
At this point the court must note that for the first time Brosmith was faced with more than a simple assault, i.e. the possibility of being held liable for $125,000 in damages. Also, that a short time after the CT Page 16495 incident, he became angry with Mr. Smith his former best friend and hasn't spoken to him since. This had to do with money; Brosmith claiming that Smith had agreed to share his legal expenses; that he did pay him approximately $800 but refused to pay the balance. Mr. Smith, however, claimed that he had loaned Brosmith $800 and when he refused to repay that, he refused to loan him any more.
Immediately after the incident Mr. Smith went to the police station. He signed a sworn statement (Attached to Exhibit 2, The Incident Report). In this statement he states that on September 17, 1994 he went with a group of friends to Murphy Scarletti's in Farmington, Connecticut and while exiting the bar he saw his friend go up behind the bushes, someone fell, he looked over the edge, went downstairs and called for help. He further states that "the person referred to in Paragraph 2 was standing in an area to my left as I exited the bar. I directed my attention from Brosmith and was talking with other members of the group when I heard . . . say "someone fell'. I went to the area where . . . had been standing, looked down the stairwell, saw someone lying at the bottom of the stairs."
In his testimony before the court Mr. Smith stuck to one story and one story only. He denied that he pushed Westcott. He believed that Brosmith left to relieve himself but didn't see him. He had his back to him most of the time while he waited at the curb for the taxi. He stated that he did not see Westcott approach but heard words being exchanged behind him. When he turned around he heard someone had fallen and 911 had been called. He then went over and looked down the stairwell. He also claimed he didn't know who pushed Westcott but he was alone.
Mr. Westcott's deposition (Exhibit 4) indicates a young man under the influence of drugs and probably alcohol, being hit by a bag which he picked up and took toward a person who he assumed hit him with it. He contradicted the policeman's quote and stated that he was not pushed by the person he went after but by another and fell over the retaining wall into the stairwell.
In the opinion of the court neither of the defendants nor Westcott were in any condition at the time of the accident to be sure of what happened and tainted their testimony with self-interest.
There was no credible evidence offered that Brosmith had "negligently and carelessly pushed Jason Westcott over a retaining wall."
There was no credible evidence offered that Shea "negligently and carelessly pushed Jason Westcott over a retaining wall." CT Page 16496
Judgment may enter for each defendant on the amended complaint and on the counterclaim.
___________________ Hale, JTR CT Page 16497